# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 6, 2011

Lyle W. Cayce
Clerk

No. 10-41184
Summary Calendar

MORGAN DUNN O'CONNOR, as Trustee of the Brien O'Connor Dunn GST Non-Exempt Trust,

Plaintiff - Appellee

v.

NATHAN OLIVER SMITH, also known as Nathan Smith,

Defendant - Appellant

v.

COMMISSIONER OF THE TEXAS GENERAL LAND OFFICE,

Intervenor Plaintiff - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:10-CV-77

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendant Nathan Oliver Smith appeals the district court's Final Judgment and Order granting summary judgment for plaintiff Morgan Dunn

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-41184

O'Connor and intervenor plaintiff Commissioner of the Texas General Land Office; and denying Smith's motion for relief under Rule 56(f) of the Federal Rules of Civil Procedure.[1] We AFFIRM.

## FACTS AND BACKGROUND

The undisputed summary judgment evidence establishes that Smith believes that he has discovered the location of a lost, nineteenth-century Spanish treasure ship, in an area of land adjacent to and underlying Melon Lake, in Refugio County, Texas. O'Connor owns the land surrounding Melon Lake and either O'Connor or the State of Texas owns the land underlying Melon Lake.[2] On four occasions between 2006 and 2008, Smith went to the location where he believes the ship is located. On his first trip, Smith used a boat to navigate into Melon Lake from waterways connected to the lake and then walked through shallow water along the perimeter of the lake to the location where he believes the ship is buried. On his second trip, Smith walked along the edge of the lake from a nearby public highway, and on his final trip, he traveled in an airboat through waterways connected to Lake Melon up to the location of the ship. On

---

[1] Smith also moved for a change of venue, which the district court denied as moot when it granted summary judgment. Smith does not challenge that portion of the court's order.

[2] As the district court noted, "[i]f the land underlying Melon Lake is found to be underneath navigable waters, the land belongs to the State of Texas," and "[i]f [it] is not underneath navigable waters, the land belongs to [O'Connor]." Dist. Ct. Op. 6-7 (citations and footnotes omitted) (citing *Cummins v. Travis Cnty. Water Control & Improvement Dist. No. 17*, 175 S.W.3d 34, 48 (Tex. App. 2005) ("According to the [Texas] [S]upreme [C]ourt, the rule has long been established in this State that the State is the owner of the soil underlying the navigable waters . . . ." (internal quotation marks omitted))); *see also* 43 U.S.C. § 1311 ("title to and ownership of the lands beneath navigable waters within the boundaries of the respective States . . . are . . . recognized, confirmed, established, and vested in and assigned to the respective States  . . . ."); *City of Galveston v. Mann*, 143 S.W.2d 1028, 1033 (Tex. 1940) ("the title and rights of the State in lands under navigable waters, including the land subject to the ordinary ebb and flow of the tides, is held by the State in trust for all the people"). There is no dispute that O'Connor owns the tracts of land on which Melon Lake is located.

No. 10-41184

one of those trips, Smith took away a piece of wood that he found at the location, which he believed came from the vessel.

In 2007, Smith brought an *in rem* declaratory judgment action in the Southern District of Texas seeking title to the vessel. *See Smith v. Abandoned Vessel*, 610 F. Supp. 2d 739 (S.D. Tex. 2009). O'Connor intervened in that suit. *See id.* at 743 & n.4. The court found that Smith had not established any right to the vessel under the law of finds or the law of salvage and dismissed his suit. *Id.* at 756, 758, 759.

While that case was pending, Smith proceeded with his goal to excavate the vessel. In April 2008, he applied to the United States Army Corps of Engineers ("the Army Corps") for a permit authorizing him to excavate the vessel. In June 2008, the Army Corps sent Smith a letter stating that in order for him to be eligible for an excavation permit, he needed to conduct a field survey, and that "[p]rior to the field survey, a scope of work must be submitted to the U.S. Army Corps of Engineers . . . and the Texas Historical Commission . . . for approval." In February 2009, the Army Corps sent Smith another letter indicating that:

> [N]o scope of work for this survey or a draft report of field investigations has been submitted to our archaeologist for review. In addition, it does not appear that you possess the required property interest in order to access the property and have a survey performed. Corps regulations [33 C.F.R. § 325.1(d)(8)] require that the 'applicant possesses or will possess the requisite property interest to undertake the activity proposed in the application.' Without the required information and permission from the property owner, we are unable to evaluate your proposed project. Therefore, your application . . . is withdrawn. This withdrawal is without prejudice to your right to reapply at a later date when you can provide the required information concerning the proposed work plan and cultural resource investigation, and have established the requisite property interest to access the property and to perform the proposed work.

No. 10-41184

In January 2010, Smith re-submitted his application to the Army Corps, and in February 2010, the Army Corps approved Smith's application to excavate the ship. The approval letter included a "remind[er] of the following":

> A Department of the Army (DA) permit, including this [Nationwide Permit], does not convey any property rights, either in real estate or material, or any exclusive privileges. Furthermore, a DA permit does not authorize any injury to property or invasion of rights or any infringement of Federal, state, or local laws or regulations. The applicant's signature on an application is an affirmation that the applicant possesses or will possess the requisite property interest to undertake the activity proposed in the application [33 C.F.R. § 320.4(g)(6)].

The approval letter also included three sheets reflecting Smith's plan. The third sheet, labeled "Project Area Google Aerial Map," shows the southern portion of Melon Lake and a diamond-shaped area for Smith's planned work site, which includes part of Melon Lake and part of the land adjacent to the lake. The map includes notations for boring at eight separate locations in the land adjacent to Melon Lake as well as notations showing a path from the public highway to the work site, with markers on the land adjacent to the lake and a note that reads, "will walk along lake."

On March 8, 2010, O'Connor filed an application in state court for an injunction barring Smith from "trespassing on and damaging" O'Connor's property. The state court issued a temporary restraining order prohibiting Smith from entering O'Connor's property. Smith subsequently removed the case to the Southern District of Texas, and on March 26, the district court entered a preliminary injunction barring Smith from boring holes in Melon Lake or entering O'Connor's property to access the lake. On April 9, the district court granted a motion to intervene by the Commissioner of the Texas General Land Office ("the State")[3]; and shortly thereafter, the State filed its intervenor

---

[3] Collectively, O'Connor and the State will be referred to as "plaintiffs."

No. 10-41184

complaint, seeking an injunction barring Smith "from excavating, probing, or digging into the soil of land . . . underlying the waters of Melon Lake."

On June 29, 2010, O'Connor filed a motion for summary judgment, and on July 16, the State filed its motion for summary judgment. O'Connor and the State both asserted that they were entitled to a permanent injunction because Smith's January 2010 application with the Army Corps demonstrated that Smith intended to enter and bore holes on the land adjacent to and underlying Melon Lake; the undisputed evidence showed that O'Connor owned the land surrounding Melon Lake and that either O'Connor or the State owned the land underlying Melon Lake; and there was no dispute of material fact that by entering onto and boring holes in the land adjacent to and underlying Melon Lake, Smith would be trespassing.

Smith filed a motion under what was then Rule 56(f) of the Federal Rules of Civil Procedure,[4] requesting that the district court deny the plaintiffs' summary judgment motions or grant a continuance to allow Smith time to conduct discovery. Smith contended that "[d]iscovery [was] necessary to determine the ownership of the land beneath Melon Lake." Smith also responded to the plaintiffs' motions for summary judgment, asserting that there was a genuine dispute of material fact regarding who owned the land underlying Melon Lake and that the plaintiffs had failed to demonstrate that they were entitled to a permanent injunction as a matter of law.

---

[4] The Federal Rules of Civil Procedure were amended effective December 1, 2010. Prior to those amendments, Rule 56(f), which is now codified at Rule 56(d), stated:

(f)      When Affidavits Are Unavailable. If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1)      deny the motion;
(2)      order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
(3)      issue any other just order.

No. 10-41184

The district court granted summary judgment for the plaintiffs and issued a permanent injunction against Smith.[5] The court concluded that the plaintiffs had met their burden to show the absence of a genuine dispute of any material fact and that they were entitled to a permanent injunction as a matter of law: By entering and drilling holes in the land adjacent to or underlying Melon Lake, Smith would be trespassing, and therefore, the plaintiffs had shown actual success on the merits, and a substantial threat of an irreparable injury. The court also determined that the threatened injury outweighed any damage the injunction might cause Smith, and the injunction would not disserve the public interest. The court denied Smith's Rule 56(f) motion because it failed to show that any additional discovery would create a genuine dispute of material fact. Smith timely appealed.

---

[5] The injunction issued by the district court is as follows:

Pursuant to this Court's granting Plaintiff's Motion for Summary Judgment (D.E. 29), this Court ORDERS that Defendant Nathan Oliver Smith and anyone acting on his behalf are permanently enjoined from entering inland from the shoreline of any of the navigable waterways within the property described as Share No. 3, Tracts 1 and 2 in Exhibit A unless he has express permission from the owner of such property. Defendant Nathan Oliver Smith and anyone acting on his behalf are further permanently enjoined from boring, digging, excavating or otherwise disturbing the submerged lands underlying Melon Lake or from removing soil or other materials embedded within those submerged lands unless he has express permission from the owner of the property described as Share No. 3, Tracts 1 and 2 in Exhibit A, or the Commissioner of the Texas General Land Office.

Pursuant to this Court's granting of Intervenor's Motion for Summary Judgment (D.E. 31), this Court ORDERS that Defendant Nathan Oliver Smith be permanently enjoined from excavating, probing, or digging into the soil of any land that belongs to the State of Texas, including land underlying any navigable waters of Melon Lake or into any other land or property that the State of Texas may own, without the State of Texas's express permission or consent and from removing any tangible items from the State of Texas's property or otherwise belonging to the State of Texas without the State of Texas's express permission or consent.

Dist. Ct. Op. 18-19. Smith does not contest the scope of the injunction

No. 10-41184

**DISCUSSION**

**I.   Summary Judgment**

Smith contends that the district court erred in granting summary judgment for the plaintiffs. "A grant of summary judgment is reviewed *de novo*, applying the same standard on appeal that is applied by the district court." *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 244 (5th Cir. 2006) (internal quotation marks omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* That is, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* "In a diversity case such as this one, we apply state substantive law," here Texas law. *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009).

Smith first contends that the district court misapplied the summary judgment standard by expressing skepticism over Smith's claims about the existence of the vessel, when it should have viewed the evidence in the light most favorable to Smith as the non-moving party; and that it erred by "find[ing]" that Smith had no right to excavate the vessel, which "was not the issue before the court."  Smith's Br. at 16-17.  However, Smith has not presented any argument as to why these "errors" demonstrate that summary judgment for the plaintiffs was improper.  Therefore, we consider these issues waived. *See, e.g., Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004)

7

No. 10-41184

("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

Smith's principal argument is that summary judgment was improper because the plaintiffs failed to establish the elements required for obtaining a permanent injunction and therefore, were not entitled to judgment as a matter of law. "The party seeking a permanent injunction must meet a four-part test. It must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (citing *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831 (5th Cir. 2004)). We "review[] the district court's grant . . . of a permanent injunction for abuse of discretion. " *N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 916-17 (5th Cir. 1996) (citing *Peaches Entm't Corp. v. Entm't Repertoire Assoc.*, 62 F.3d 690, 693 (5th Cir. 1995)). We conclude that the plaintiffs met the four-part test for a permanent injunction and the district court did not abuse its discretion in granting the injunction.

1.     The undisputed summary judgment evidence shows that the plaintiffs established success on the merits of their substantive claim of trespass. Under Texas law, "'[e]very unauthorized entry upon land of another is a trespass even if no damage is done or the injury is slight.'" *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 703 (Tex. 2002) (quoting *McDaniel Bros. v. Wilson*, 70 S.W.2d 618, 621 (Tex. Civ. App. 1934)). The plaintiffs introduced uncontroverted summary judgment evidence that O'Connor owns the tracts of land on which Melon Lake is located, that O'Connor or the State of Texas owns the land underlying Melon Lake, and that neither O'Connor nor the State consented to Smith's entry onto their land. Therefore, the summary judgment evidence shows

8

No. 10-41184

that Smith's entry onto the land surrounding and underlying Melon Lake is trespass because it is the "unauthorized entry upon the land of another."

Smith contends that the plaintiffs failed to establish trespass because they did not establish whether O'Connor or the State owns the land underlying Melon Lake. Smith asserts that "[t]o prove trespass, the plaintiff must prove 'he owns or has a lawful right to possess real property.'" Smith's Br. 18 (quoting *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App. 2006)). However, Smith relies on a narrow quote from *Wilen* and the remainder of the sentence from which Smith quotes belies its support for his position: "*To recover damages* for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property . . . ." *Wilen*, 191 S.W.3d at 798 (emphasis added). The plaintiffs here are not seeking damages from past trespass, but an injunction to prevent further trespass. Under Texas law, "[a] person who, without right, has entered on premises that are in the possession of another may not defend an action for trespass by showing that the plaintiff did not have title to the property or that the title asserted by the plaintiff was defective." 70 Tex. Jur. 3d Trespass to Realty § 14 (2011) (internal footnote omitted) (citing *Forst v. Rothe*, 66 S.W. 575 (Tex. Civ. App. 1902) (holding that defendants were liable to plaintiffs for trespass when they entered land in plaintiffs' possession, despite defendant's contention that the land was state land: "it was no justification that the land was state land, and, if it were, . . . [it] does not matter in this action, so long as defendants exhibited no title")).[6] Smith does not purport to have title to the land surrounding or underlying Melon Lake.

---

[6] Smith makes a similar argument that summary judgment was improper because there was a genuine dispute about who owned the land underlying Melon Lake. However, whether O'Connor or the State of Texas owns the land underlying Melon Lake does not affect the outcome of this suit and therefore, it is not a "material fact." *See Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted.").

No. 10-41184

Smith next argues that if the State of Texas owns the land underlying Melon Lake, there is a genuine dispute about whether the State consented to his entry. We disagree. A "dispute about a material fact is 'genuine,'" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In opposing summary judgment on the grounds that there is a genuine dispute about whether the State consented to his entry onto the land underlying Melon Lake, Smith relies on the February 2011 Army Corps permit, which Smith claims was issued "with the apparent concurrence of the Texas Historical Commission" (THC), and correspondence related to the permit. Smith Br. 21. However, the Army Corps specifically informed Smith by letter during the permitting process that "it does not appear that you possess the required property interest in order to access the property and have a survey performed," and the Army Corps permit clearly stated that it "d[id] not convey any property rights" and was issued based on Smith's "affirmation that [he] possess[ed] or will possess the requisite property interest" to excavate the ship. Accordingly, evidence that the Army Corps consulted with THC officials during the Army Corps' permitting process, does not create a "genuine" dispute that the State of Texas consented to Smith's entry on its land. *See Anderson*, 477 U.S. at 248.

2.    The plaintiffs established that the failure to grant the injunction will result in irreparable injury for which no adequate remedy at law exists. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847-48 (5th Cir. 2004). "It is the established law in [Texas] that if one is in possession of certain premises, and thereby capable of using and enjoying them, and another wrongfully attempts to invade this possession or to destroy the use and enjoyment of such premises, he may resort to a court of equity and secure an injunction restraining the wrongdoer, for there is available to him no plain and adequate remedy at law." *S. Pine Lumber Co. v. Smith*, 183 S.W.2d 471, 472

10

(Tex. Civ. App. 1944) (internal quotation marks omitted).[7]  Smith does not dispute that he intends to enter and bore holes on land belonging to O'Connor and/or the State of Texas.  *See* Smith Br. 22.  Smith failed to show a genuine dispute of material fact that entering the plaintiffs' land and boring holes in it will not constitute irreparable injury for which a remedy at law is inadequate.

3.     The plaintiffs established that their injury outweighs any damage that the injunction will cause Smith.  As just explained, the plaintiffs established that Smith's entry onto and boring holes in the land surrounding and underlying Melon Lake will cause them injury.  Smith argues that the injunction will cause him damage because he "has obtained and is seeking investors for the purpose of salvaging the abandoned vessel."  Smith Br. 23.  However, in support of his argument, Smith relies only on his lawyer's assertions before the district court during the hearing on the temporary restraining order: "[Smith] is seeking investors at this point in time," and "I talked to a number of people in California who want to invest in this project." These unsubstantiated assertions are not competent summary judgment evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A); *see also Leggieri v. Mealo*, 484 F. Supp. 719, 721 (E.D. Pa. 1980) ("[T]he assertion by an attorney . . . 'that he has discovered witnesses who can and will testify,' is not itself evidence, nor may it substitute for the presentation of evidence, cognizable by the court in considering a motion for summary judgment."). Therefore, Smith

---

[7] *See also* 70 Tex. Jur. 3d Trespass to Realty § 28 ("Where a trespass invades the possession of one's land, or destroys the use and enjoyment of that land, an injunction is a proper remedy." (citing *City of Arlington v. City of Fort Worth*, 873 S.W.2d 765 (Tex. App. 1994))); *id.* § 29 ("A writ of injunction will be granted to enjoin the defendant from trespassing on land shown to be in the plaintiff's possession." (citing *S. Pine Lumber Co.*, 183 S.W.2d 471)); *id.* § 30 ("[A]n injunction is a proper remedy to restrain a repeated or continuing trespass where the remedy at law is inadequate because of the nature of the injury, or the necessity of a multiplicity of actions to obtain redress." (footnote omitted) (citing *Aguilar v. Trujillo*, 162 S.W.3d 839 (Tex. App. 2005); *City of Arlington*, 873 S.W.2d 765; *MGJ Corp. v. City of Houston*, 544 S.W.2d 171 (Tex. Civ. App. 1976))).

failed to show a genuine dispute of material fact that the plaintiffs' injury outweighed any damage that the injunction would cause him.

4.      The plaintiffs established that the injunction will not disserve the public interest.  Clearly, it is not against the public interest to prevent further trespass in contravention of the state's laws.   Smith's argument that there is a countervailing public interest in salvaging abandoned ships misses the mark. The earlier declaratory judgment action determined that Smith has no right to the abandoned ship, *see Smith*, 610 F. Supp. 2d 739, and Smith fails to show that any public interest in ensuring that abandoned vessels are salvaged overrides firmly-established trespass laws.

Accordingly, Smith has failed to show that the district court erred in granting the plaintiffs' motions for summary judgment.  There was no genuine dispute of any material fact, and the plaintiffs were entitled to judgment as a matter of law because they established the necessary elements for a permanent injunction.   It was within the district court's sound discretion to grant a permanent injunction, *see N. Alamo Water Supply Corp.*, 90 F.3d at 916-17, and it was not an abuse of the court's discretion to grant the injunction.

## II.   Denial of Smith's Rule 56(f) Motion

Smith next attacks the district court's denial of his Rule 56(f) motion to postpone ruling on the plaintiffs' motions for summary judgment in order to allow Smith to conduct discovery.  "We review the denial of a Rule 56(f) motion for abuse of discretion." *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999).  "[T]o justify a continuance, the Rule 56(f) motion must demonstrate 1) why the movant needs additional discovery and 2) how the additional discovery will likely create a genuine issue of material fact." *Id.* at 534-35 (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)).  Smith presented one reason in his verified Rule 56(f) motion: that there

No. 10-41184

was a genuine dispute over who owned the land underlying Melon Lake and further discovery was necessary to establish this fact.[8]  As discussed above, whether O'Connor or the State of Texas owns the land underlying Melon Lake is not a "material" fact because it does not affect the outcome of this litigation. Therefore, the district court did not abuse its discretion in denying Smith's Rule 56(f) motion.

## CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

[8] Smith argued in his response to the plaintiffs' motions for summary judgment that further discovery was necessary to determine if the State impliedly consented to his entry onto the land underlying Melon Lake by virtue of the THC's communications with the Army Corps during the permitting process.  "On appeal, we will not consider justifications for granting a continuance that were not presented with the original [Rule 56(f)] motion."  *Stearns Airport Equip. Co.*, 170 F.3d at 535 (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 167 (5th Cir. 1991)).